The Honorable Steven Bryles
State Senator
514 West Main
Blytheville, Arkansas 72315-3334
Dear Senator Bryles:
I am writing in response to your request for an expedited opinion on the constitutionality and enforceability of House Bill 1451.
RESPONSE
Your opinion request asks very generally about the constitutionality and enforceability of House Bill 1451 without naming specific concerns. It is my understanding that you wish for my opinion on this matter to be expedited. Because time constraints do not allow for extensive constitutional research, I have restricted the content of this opinion to the most salient issue raised by the bill. This bill may well present other issues that are less apparent.
Having reviewed the copy of House Bill 1451 enclosed with your opinion request, it is my opinion that this bill, if passed, is potentially subject to a constitutional challenge. Specifically, it is my opinion that a court called on to review this legislation might well find a violation of the commerce clause of the United States Constitution. To be clear, I cannot definitely state a court would find such a law unconstitutional. However, for the reasons articulated below, a reasonable argument to that effect can be made.
The basis for any such challenge will no doubt rest upon the United States Supreme Court case of West Lynn Creamery v. Healy,512 U.S. 186
(1944). It *Page 2 
appears that House Bill 1451 may share some important similarities with the Massachusetts pricing order struck down by the U.S. Supreme Court in that case as a violation of the dormant commerce clause.
In Healy the state of Massachusetts required all milk "dealers" selling fluid milk to retailers in the state to pay an assessed fee or "premium payment." Healy at 189. These premium payments were facially non-discriminatory as they were required regardless of the milk's state of origin. Id. at 192. The payments went into the "Massachusetts Dairy Equalization Fund." Id. at 191. Each month the contents of this fund were distributed to Massachusetts milk producers with the goal of reviving the Massachusetts dairy industry by offsetting the comparatively low prices that the producers received for their product.Id. at 190-92. The stated purpose of this pricing order was to "preserve our local industry, maintain reasonable minimum prices for diary farmers, thereby ensure a continuous and adequate supply of fresh milk for our market, and protect the public population." Id at 191.
As previously stated, the Court found that this pricing order violated the dormant commerce clause. The Court opined that although the non-discriminatory fee charged and the subsidy provided by the order might each be constitutional standing alone, the combination of the two in such a direct manner was akin to a tariff. Healy at 194. The Court stated that "by so funding the subsidy, [Massachusetts] not only assists local farmers, but burdens interstate commerce." Id. at 200. The Court also found irrelevant the fact that the wholesalers paying the premium were not direct competitors of the farmers benefitted by the subsidy, stating, "a burden placed at any point will result in a disadvantage to the out-of-state producer." Id. at 203. Moreover, the Court found that Massachusetts' argument that only the consumers now paying higher prices for milk felt any burden "ignores the fact that Massachusetts diary farmers are part of an integrated interstate market." Id at 204. Finally, the Court dismissed Massachusetts' rationale for the order stating: "Preservation of local industry by protecting it from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." Id. at 206.[1] *Page 3 
Given the time constraint placed upon me in rendering this opinion, I am unable to conduct detailed research with regard to this complex constitutional issue. Therefore, I can only say that a very similar law has been previously stricken by the U.S. Supreme Court. Because of that, it is my opinion that HB 1451 is possibly unconstitutional for the same or similar reasons set forth in Healy.
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL Attorney General
[1] Justice Rehnquist authored a strong dissent to this opinion, which was joined by Justice Blackmun. The dissent stated:
 In case after case, we have approved the validity under the Commerce Clause of such enactments. . . . [N]othing in the dormant Commerce Clause suggests that the fate of state regulation should turn upon the particular lawful manner in which the state subsidy is enacted or provided. . . . To stay experimentation in things social and economic is a grave responsibility. Denial of the right to experiment may be fraught with serious consequences to the Nation. It is one of the happy accidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory[.]
Id. at 217 (internal quotes omitted.) *Page 1